CHANCERY.     *Davis and Stones vs. Phelps.*

Case 133.     Appeal from the Madison circuit; GEO. SHANNON Judge.

*Bank note contracts. Mortgages. Conditional sales. Practice. Vendor and Vendee. Liens. Error. Rents. Interest. Costs.*

November 29.   Judge MILLS delivered the Opinion of the Court.

*Phelps' deed of conveyance to the Stones.*

On the 30th of April, 1823, Philip Phelps being seized in fee of a tract of land, conveyed it to Samuel and James Stone, by a deed with general warranty, expressing a consideration of eight hundred dollars.

*Agreement between the parties for the redemption of the land.*

At the same time, the said James and Samuel Stone executed to said Phelps a writing reciting that they had received such conveyance; that Phelps was indebted to them about one hundred dollars; that they had loaned him, that day, eighty dollars more, and were to furnish him, from time to time, what goods he might want, and also two hundred and fifty dollars more between the date of the writing and the ensuing fall, as it might suit them, it being understood that the whole money and goods so furnished, should not exceed five or six hundred dollars. It was further stipulated that said Phelps wished to purchase the land back so soon as he might find it convenient, and they would re-sell it for the amount of his accounts and notes, which they might have against him; that is, when he paid them the whole of his debt, they were to convey to him the land above described, provided the payment was made in two years, and they were to account to him for the rents of the land, except the rent of the current year, which Phelps was to receive, and afterwards they were to have the possession.

*Phelps sells part of the land to Davis, and he agrees to pay the Stones.*

On the 20th March, 1824, Phelps sold eighty acres of the same land to William Davis, leaving a part contained in the conveyance to the Stones unsold, at the price of $12 per acre, amounting to $960, $194 50 of which Davis paid him in hand; and the parties to this contract entered into a writing, in which it was stipulated that, in order to obtain the title it was necessary to pay to the Stones about $400 in gold or silver, and that Davis should pay said debt,

or whatever was due to the Stones, and have a credit for it in the price of the land, which payment was to be made on the 1st of January, 1825, and the balance of the purchase money was to be paid to said Phelps on the same day, if the money was got from Moses Reynolds, to whom Davis had sold a tract of land; if not then, the payment was to be made within one year thereafter, Davis paying interest. Phelps also, in said writing between himself and Davis, transferred the writing which he held for the redemption and re-conveyance of the title, and Phelps was to convey said title with warranty to Davis, so soon as Davis paid the Stones what was due to them, and so soon as Phelps could get the title from Samuel Stone, and the representatives of James Stone, he having departed this life.

On the 27th of May, 1825, Phelps brought his action of covenant on the writing executed between him and Davis, and recovered a judgment against Davis, in damages, equal to the whole price of the land, *except the $194 50 paid in hand, and excepting also the last payment, which was contingently suspended till the first day of January, 1826.*

To enjoin this judgment, Davis filed his bill in equity against Phelps and the Stones, charging that Phelps was insolvent; that he could not get the title except from the Stones; that Phelps had misrepresented his debt due to the Stones, and that it was far beyond $400, and that the Stones contended they were not bound to convey the land at all, and that their purchase was a conditional sale and not a mortgage; that the sum due to the Stones was in Commonwealth's bank paper, but was secured by notes calling for dollars. He prays that the account between the Stones and Phelps may be settled, and that the debt may be discharged out of what he owed Phelps, and the rents settled and decreed to him from the time he ought to have had the title, and that a conveyance should be made to him, and for general relief.

Phelps answered, contending that he did not owe to the Stones more than $400, and insists that the aoccunts should be settled between him and the

*Margin notes:*

Davis &c. vs. Phelps.

Judgment recovered by Phelps ag'st Davis, on his covenant.

Davis' bill against Phelps and the Stones.

Phelps' answer and crossbill ag'st the Stones.

DAVIS &c.
vs.
PHELPS.

Stones; that Davis should be compelled to pay the amount due the Stones, and that the Stones should be compelled to convey, and Davis to accept the title, and to pay the whole balance of the land. He charges that the sum due to the Stones was in bank paper, then greatly depreciated, though the notes were drawn for dollars, and he requires the demand to be scaled; and makes his answer a cross bill against both Davis and the Stones.

Answer of
the Stones.

The Stones answer both the original bill and this cross bill, and insist that their purchase was a conditional sale, but they are still willing to convey the land, if the debt due them, is paid. They admit that the sum due them, though nominally specie, is in paper of the bank of the commonwealth, which they are willing to receive, and nothing else, and if that is not paid to them, they refuse to convey; and they exhibit the amount of their demands due by note, and express a willingness to settle and give credit for the rents.

Decree of the
circuit court

The court below, through the intervention of a commissioner, settled the account between Phelps and the Stones, and liquidated the bank paper to specie, and calculated interest thereon, and gave credit for the rents received by the Stones, and decreed that Davis should pay the balance by a certain day, and if he failed to do so, that the land, or that part of it which Davis had bought, should be sold to pay the debt; and if that was not enough, then the other part, not sold to Davis, should be sold, and the amount thus discharged; and also directed conveyances to be made to Davis, if he paid the amount.

Grounds relied on by the Stones.

From this decree, both Davis, the complainant in the original suit, and the Stones, who were defendants in both bills, have appealed. It is here insisted by the Stones, that they ought to have had the amount due to them, allowed in paper of the bank of the commonwealth specifically, and ought not to have been compelled to part with their title unless this had been granted.

They attempt to support this by insisting that the title made to them was a conditional sale, and not a

mortgage; and consequently, that the right to re-
purchase was forfeited, and could only be decreed
on the terms offered in their answer, which was to
take the bank paper now; and also, on the further
ground that they would have a right to recover
bank paper, specifically, by the remedy given by
act of assembly, and, therefore, they ought to be al-
lowed to recover it on their mortgage, or their elec-
tion to do so.

As to the first ground, the question between a
mortgage and conditional sale is often one of difficul-
ty, because it is a question of intention often to be in-
ferred from the acts and understanding of the par-
ties, without any express declaration or evidence on
the subject.   But in this case we do not conceive the
question difficult.   The deed, it is true, is absolute
on its face, but the instrument of writing, executed
at the same time, is a complete defeasance on con-
dition of the repayment of the money, and all such
writings will be taken together in a court of equity,
as one instrument, and have ever been construed as
a mortgage, as much so as if the condition was in-
serted in the deed, unless there is something in the
terms of the writing, or circumstances of the case,
which forbids that interpretation.   Construing these
writings in this manner, it is clear that the Stones
kept the debt due to them entirely distinct from the
price of the land, and the debt was never supposed
to be extinguished by it, during the period for a re-
purchase.   The Stones took notes to close the ac-
counts long after the deed, and preserved in their
own hands other legal remedies besides resting up-
on the title to the land.   They could, by an action
or actions of debt, at any time, have recovered their
demands, and at all times had their election to do so;
when if it was a conditional sale, the debt would
have been discharged by the conveyance, and could
only have been resuscitated by the repurchase. The
parties continued to treat it as a mortgage, and to
make further advancements upon it, and we have,
under these circumstances, no hesitation in constru-
ing this conveyance to be a mere security for money,
and therefore redeemable in a court of justice, as a
mortgage would be after the condition was forfeit-

DAVIS &c.
vs.
PHELPS.

Marks of a
mortgage, in
contradis-
tinction to a
conditional
sale.

Where an ob-
ligation is
written by
mistake for
money, in-
stead of com-
monwealth's
bank notes,
the chancel-
lor will not
allow the
creditor to
insist on the
paper; but
the specie
value of the
paper when
due, with in-
terest, is the
amount of
the demand.

DAVIS &c.
vs.
PHELPS.

ed. The right to redeem does not, therefore, rest on the answer of the defendants, but exists in equity, independent of the answer; and the Stones can only be entitled to receive that, which Phelps is legally liable to pay.

Mortgagor's demanding more than is due, does not affect his right to recover the costs of a suit to foreclose the equity of redemption, and sell the estate.

As to the second ground, of the Stones having a right to recover paper, specifically, in a court of law, it is not admitted that they could so recover. The notes are not made payable in bank paper on their face, which is an indispensable requisite of the statute. The notes are simply drawn for dollars, and therefore on their face could demand specie, and it is by the confession of the parties alone that they are to be now taken as notes securing bank paper, and we are aware of no form of action under the statute which would admit of a specific recovery of paper in a court of law. Besides, though part of these notes by which this debt is secured are dated after the act of assembly was passed, yet another part of them are dated before the passage of this act, and it has already been settled by this court that the act did not embrace notes executed before its passage. And as to the part executed afterwards, they were all executed in conformity to, and in completion of a previous contract between the parties, which was drawn and entered into before the passage of the act, and which seems equitably to control and fix the construction of the subsequent writings between the parties, and ascertain the criterion of recovery by the Stones, and that is, as the court below has decided, the value of the paper when due, fixed at a specie standard, with its accruing interest, and the Stones cannot complain of the decree upon this ground.

Such costs ought to be paid out of the proceeds of the sale.

It is also insisted by the Stones, that the court below erred in refusing to allow them their costs out of the mortgaged estate; but after decreeing them their costs, allowed them to be recovered of Phelps alone, who is admitted to be insolvent.

Cases where the bill may be dismissed on the com-

This exception is well taken. For although the Stones, as we have seen, demanded too much upon their mortgage, by insisting on the appreciation of the bank paper, yet they ought to be allowed to re-

cover what is really due to them. If they had filed
their bill to foreclose this mortgage, insisting upon
this appreciation, and asking a foreclosure of the
mortgage to gain their demand, their being defeated
in the recovery of the larger sum would not have
prevented them from recovering what was really
their due, and that with costs, unless there had been
a previous tender to them of the right sum, or some
such controlling circumstance depriving them of
costs.   As there has been no offer to pay them, and
in this suit they stand as defendants, there is the
same reason that they should recover the costs, and
that they should also receive it out of the mortgag-
ed estate.

For it is a general rule that he who has to resort
to a court of equity, to enforce a mortgage, has a
right to have the costs necessarily incurred, charged
on the mortgaged·estate; and the Stones ought not
to be compelled to trust to to a recovery thereof
*from Phelps, from whom nothing can be recovered.*
*These costs must also be a credit to Davis against*
Phelps.

There are also insuperable objections to the form
of the decree, which was calculated to embarrass the
rights of the parties.   The court gave to Davis and
Phelps, time to redeem the premises by paying the
money, and here the court ought to have rested,
with only directing, unless they did so pay by a time
specified in court, then a foreclosure and sale would
be decreed.   On the coming of this day, if the mon-
ey had not been paid, or tendered out of court, and
then brought into it, the court ought to have de-
creed a sale.   In some such cases, where the mort-
gagees are complainants, it is usual to dismiss the bill
in case of failure to pay, but in this case, that ought
not to have been done, because that Davis has an
interest in the land, and a lien for what he has paid,
subject to that of the Stones, therefore, he had a
right to insist upon the sale.   Instead, however, of
doing this, the court below, after fixing the day,
went on, in the same breath, to direct the sale on the
failure to pay the money, and appointed a com-
missioner to execute it, and delegated to him all the

DAVIS &c.
vs.
PHELPS.

plainant's de
fault in pay-
ing the mon-
ey, according
to the inter-
locutory de-
cree.

Mortgagee
cannot be
compelled to
accept a re-
plevin bond
in lieu of his
lien on the
land.

Davis' com-
plaints a-
gainst the de-
cree.

Davis &c.
vs.
Phelps.

the judicial duties of deciding upon the payment, or tender, of the money; a substantial inaccuracy in foreclosing mortgages in the inferior courts, of which we have frequent cause to complain, in the practice of the inferior courts.

Smallness of the matter of the error may be an objection to a reversal.

There is a further objection to the decree, worthy of notice, and that is, the court allowed to Davis the right to replevy the amount of the decree in the clerk's office, and thus to release the lien of the Stones on the land, thus compelling them to accept Davis recognisance in lieu of the security afforded them by their mortgage, and making them abide by the contract between Davis and Phelps, to which they were neither party or privy.

Interest and rents between vendor and vendee ought to run together.

Davis also complains of this decree, and we must now attend to his supposed grievances. The grounds of complaint, alleged by him, are that the court below: First, failed to allow him rents for the land from the time he ought to have had the title and possession: Secondly, that the court allowed the full price of the land to Phelps, including what was recovered by the judgment at law, and adding thereto a balance of the last instalment, which was not recovered at law, and then dissolved his injunction for that balance; thus allowing Phelps to recover by the aid of his judgment what was not in it; or an instalment for which there was no recovery at law: Thirdly, that the court erred in allowing against him the cost of the action at law which he insists, was wrongfully brought by Phelps.

Decree corrected as to rents and interest.

As to the rents, if the decree was not to be reversed on other grounds, we might feel somewhat indisposed to disturb it on that account; because the court has refused to charge Davis with the interest of his purchase money, and the interest comes so near to the amount of the rents, that the difference would hardly be of sufficient value to disturb the decree.

And it is evident that rents and interest ought to run together, and as he was kept out of his land for which he was entitled to rent, so Phelps, or his creditors, were kept out of the money of which Davis had the use in the mean time.

It would however, have been more regular to have charged Phelps with the rent, and Davis with the interest of the money after it became due, especially as part of the purchase money was by express stipulation to bear interest before it could be coerced, and the effect of the decree is a specific enforcement of the contract for the sale by Davis. It is true, Davis himself was in default, and did not do all that he might have done before he was sued, or before he brought this suit. He did not tender to the Stones the $400 on the day it was due, nor did he endeavor, by any application to them, to ascertain what was really due, or make any effort to pay it. But Phelps by his action at law has insisted upon the contract, and thus waived the defalcations of Davis, which gives the latter a right to come into a court of equity, and insist on a specific performance. It is therefore, more strictly correct to charge him with interest of the money and give him his rents. It is true that the Stones get these rents, and are bound to *credit them on their demand*, and part they have gotten, and *Phelps has given them a receipt* therefor; but while Phelps obtains a credit against the demand of these rents from the Stones, Davis ought to have received a credit for the same amount against his demand against Phelps.

As to the second objection to the decree on part of Davis, if there had been any thing due to Phelps of the judgment at law, on any of the breaches for which the judgment was recovered, it would have been correct to have dissolved the injunction for that amount. But it was improper to dissolve the injunction for any more. Any balance due, for which judgment was not recovered, the court ought to have rendered a decree against Davis, for the amount, and after the debt due the Stones was paid, to have retained the title, and enforced the lien of Phelps on the land for the payment thereof.

As to the costs at law, we cannot say that the decree was too rigorous against Davis to permit him to stand chargeable therewith. We have seen that he was in default and did not do every thing which he ought to have done. And although the Stones were

*Margin notes:*

DAVIS &c.
vs.
PHELPS.

Injunction ought not to be dissolved because complainant owed defendant other debts, when no part of the demand the judgment was recovered on was justly due.

Party in default cannot be released from the cost of the action at law.

DAVIS &c.
vs.
PHELPS.

in the wrong in demanding more than they were entitled to, yet this did not excuse Davis from doing any thing or attempting to do any thing on his part. He might have tendered the right sum, and if refused brought his bill to redeem, in the first instance, against both Phelps and the Stones, instead of doing nothing till he was awakened by the suit of Phelps, to bring this suit to get clear of the judgment against him.

Day ought to be given to pay the Stones, after their account is ascertained, as well as to pay Phelps the balance after it is ascertained, and if not paid, the land ought to be sold, first for the benefit of the Stones, and Phelps to take the balance after all credits are given to Davis, charging Davis with the principal, legal interest after the demand was due, and the costs at law, and crediting him with the rents, and all payments which he may make, or is bound to make, to the Stones, after the rents are credited on their demand. The lien of the Stones to be extended to the whole land, and that of Phelps against Davis to the part sold to Davis, and after sale, if a balance is due to Phelps, not discharged by the sale, Phelps is to have a decree therefor, deducting the costs of this suit.

Mandate.

Decree reversed with costs, and cause remanded for new proceedings and decree, not inconsistent with this opinion.

*Turner* and *Caperton* for appellants; *Breck* for appellee.